**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

**V.**                              **CIVIL ACTION NO.**  1:23cv258HSO-BWR

                                                 **DEMAND FOR JURY TRIAL**

**APRIL TUCKER BEARD;**
**APRIL'S MANE ATTRACTION, INC.; and**
**APRIL'S MANE ATTRACTION, INC., ACADEMY**
**A/K/A APRIL'S MANE ACADEMY**                                   **DEFENDANTS**

## COMPLAINT

The United States of America brings this action against Defendants April Tucker Beard ("Beard"), April's Mane Attraction, Inc. ("AMA"), and April's Mane Attraction Inc., Academy a/k/a April's Mane Academy ("AMA/Academy"), (collectively Defendants), to recover treble damages and civil penalties for violations of the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA"). In support of its Complaint, the United States alleges as follows:

## INTRODUCTION

1.      The Post-9/11 GI Bill, 38 U.S.C. §§ 3301–27, provides educational assistance benefits for eligible veterans and members of the armed services who enroll in qualified education or training programs. The Department of Veterans Affairs ("VA") pays benefits for tuition and fees directly to qualifying schools and provides qualifying veteran students a monthly housing allowance and stipend for books and supplies. These benefits are part of the United States' promise to support veterans after honorably serving our country.

1

2.      Beard, individually and as the owner/operator of AMA and AMA/Academy, used the Post-9/11 GI Bill program for her personal gain, receiving $235,734.00 in VA education assistance funds to which she was not entitled.  Beard purposefully and exponentially increased the amount of tuition reimbursement she sought from the VA for eligible veteran students ($22,400.00) as compared to similarly situated civilian students for whom she sought $50/week ($2,400.00).

3.      Beard did not regularly conduct classes or otherwise provide instruction at AMA/Academy to VA students as she certified on her VA applications and VA enrollment certifications.  Most of the Veteran students for whom AMA/Academy received Post-9/11 GI benefits did not receive certificates of completion and did not test with the Mississippi State Board of Barber Examiners to fulfill licensing requirements in Mississippi.

4.      Beard knowingly perpetuated the fraud and attempted to conceal her wrongdoing by keeping sloppy and inadequate financial records and inaccurate attendance records.

5.      To qualify as an approved non-accredited institution eligible to receive VA education assistance funds, Beard certified on behalf of AMA and AMA/Academy that she would comply with program rules and requirements to include maintaining accurate attendance and financial records; charging equal tuition for VA and non-VA students; and teaching her approved courses in compliance with the school catalog submitted in support of her applications.  These certifications were materially false.

6.      The VA would not have remitted Post-9/11 GI Bill funds to Beard, AMA, and AMA/Academy had it known that these claims for payment and certifications were false.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter and all parties to this action under 28 U.S.C. §§ 1331 and 1345.  This is a civil action by the United States that arises under the FCA and federal common law, and all claims in the action form part of the same case or controversy.

8.      The Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants have transacted business, and committed acts proscribed by the FCA, within this District.

9.      Venue is proper in the Southern District of Mississippi under 28 U.S.C. §§ 1391(a)-(c), 1395(a), and 31 U.S.C. § 3732(a), because Defendants are located, reside, do business, or committed the acts at issue in this District.

## PARTIES

10.     Plaintiff United States of America brings this action on behalf of the VA, which regulates the provision of educational assistance benefits under the Post-9/11 GI Bill.

11.     Defendant April Tucker Beard ("Beard") is a resident of Alabama residing at 2262 Joy Lane, Mobile, Alabama 36617.  Beard is the CEO and owner/operator of April's Mane Attraction, Inc., ("AMA") and April's Mane Attraction, Inc., Academy ("AMA/Academy"). Beard uses these businesses interchangeably.

12.     Defendant AMA is a for profit domestic corporation registered to do business in Alabama, with its principal place of business located at 1303 Michigan Avenue, Mobile, Alabama 36605.  Beard incorporated AMA and serves as the registered agent.  Beard has represented that AMA owns AMA/Academy.

13.     Defendant AMA/Academy is located at 4907 Hubert Street, Moss Point, Mississippi 39563, and is not registered to do business in Mississippi or Alabama. AMA/Academy is licensed by the Mississippi State Board of Barber Examiners.

## FALSE CLAIMS ACT

14.     The FCA provides, in part, that any person who individually, or in concert with others, knowingly presents, or causes to be presented, a false claim for payment or approval, or

3

makes, uses, or causes to be made or used a false statement that is material to a claim for payment or approval, is liable to the United States for penalties and treble damages.  *See* 31 U.S.C. §§ 3729(a)(1)(A)-(B).

15.     Knowingly means that the person: (1) had actual knowledge of the information; (2) acted in deliberate ignorance of the truth or falsity of the information; or (3) acted in reckless disregard of the truth or falsity of the information.  *See* 31 U.S.C. §§ 3729(b)(1).  The person need not have acted with specific intent to defraud the United States to be liable under the FCA.  *Id.*

16.     As is relevant here, a "claim" under the False Claims Act includes "any request or demand, whether under a contract or otherwise, for money or property . . . that is presented to an officer, employee, or agent of the United States."  31 U.S.C.§ 3729(b)(2)(A)(i).

17.     Sections 3729(a)(1)(A) and (B) set forth FCA liability for any person who knowingly submits a false claim to the government or causes another to submit a false claim to the government or knowingly makes a false record or statement to get a false claim paid by the government.  Section 3729(a)(1)(G) is known as the reverse false claims section; it provides liability where one acts improperly-not to get money from the government, but to avoid having to pay money to the government.

18.     A person found in violation of the FCA is liable to the government for treble damages and for a penalty of between $5,500.00 and $11,000.00 per violation.

### THE POST-9/11 GI BILL

*A.  Chapter 33 Benefits.*

19.     The Post-9/11 GI Bill provides financial support to service members, veterans, and eligible dependents who attend education or training programs taken at colleges or universities as well as institutions other than institutions of higher learning ("IHL"), or non-college degree

programs ("NCD"), and they may be accredited or non-accredited.  *See* 38 U.S.C. §§ 3301–27.  These benefits are commonly referred to as "Chapter 33 Benefits."

20.     For eligible individuals, the Post-9/11 GI Bill pays up to 100% tuition and fee coverage, which is paid directly to the school.  Students who are not active-duty service members also receive a monthly housing allowance and stipend for books and supplies.  S*ee* 38 U.S.C. §§ 3313(g)(3), (h).

21.     The VA uses an internet-based system called "VA-ONCE" to process claims submitted for payment of tuition and fees by educational institutions.[1]  Each institution must designate at least one certifying official who is authorized to submit claims through either the VA-ONCE system or in paper form.  The VA processes these enrollment certifications for each student and then automatically pays the benefits for tuition and fees directly to the school based on the certification.

**B.  *VA Approval Process for IHL and NCD Programs.***

22.     Non-accredited institutions, such as AMA/Academy, seeking to provide VA-eligible programs must first apply to, and receive approval from, their State Approving Agency ("SAA").  SAAs are independent state agencies which oversee approval and compliance with federal guidelines.  38 U.S.C. § 3676(a).  SAAs are also responsible for ensuring the quality and integrity of programs of education and training for the use of VA educational assistance benefits.  38 U.S.C. § 3671.  In Mississippi, the SAA is identified as the Mississippi VA State Approving Agency ("MS VA SAA").

23.     The MS VA SAA conducts on-site compliance visits of educational institutions that provide VA-eligible programs.  The MS VA SAA must approve all courses of education

---

[1] The VA recently switched to a different internet-based program called Enrollment Manager.

offered by the non-accredited institution.  *See* 38 U.S.C. § 3676, 38 C.F.R. § 21.4254.  The non-accredited institutions are also subject to the limitations set forth in 38 U.S.C. § 3680A, "Disapproval of enrollment in certain courses" and 38 C.F.R. § 21.4201, "Restrictions on enrollment; percentage of students receiving financial support".

24.     An educational institution that wishes to enroll veterans in non-accredited courses must submit a written application accompanied by the current school catalog to the appropriate SAA, which must include, among other things, a "[d]etailed schedule of fees, charges for tuition, books, supplies, tools, student activities, laboratory fees, service charges, rentals, deposits, and all other charges."  38 U.S.C. § 3676(b)(8); 38 C.F.R. § 21.4254(b)(8).

25.     Once the SAA approves the school's course of education, benefits for tuition and fees under the Post-9/11 GI Bill are paid directly to the school providing the course in the amount allowable under the statute.  38 C.F.R. § 21.9680(a)(1).  The amount of an eligible veteran's benefits, including tuition and fees, is based on his/her time in service.  *See* 38 U.S.C. §§ 3311(b), 3313(c), 3313(g)(3)(A)(iv).  The VA will not pay educational assistance to NCD schools for non-accredited courses offered by distance learning.

26.     As set forth in the VA's publicly available School Certifying Official Handbook ("SCO Handbook"), "[t]uition is the actual established charges for tuition the student is required to pay."  Pursuant to 38 C.F.R. § 21.9505, "established charges means the actual charge for tuition and fees that similarly circumstanced nonveterans enrolled in the program of education are required to pay."

27.     Schools are not permitted to charge more for courses offered to veterans who may be eligible for assistance under VA's educational benefit programs as compared to civilian applicants who do not receive government benefits.  *See* 38 C.F.R. § 21.4210(d)(4)(i).  If a school

6

has overcharged a veteran or other eligible person, or has otherwise violated federal law or regulations, it may be disqualified from the benefit program altogether. *Id.*

### C. *Certifying and Reporting Requirements.*

28.     Each school enrolling eligible individuals in programs approved for VA educational assistance benefits is required to submit initial enrollment documents for veterans within 30 days of the beginning of the term, keep the VA informed of the enrollment status of veterans, maintain current knowledge of the VA rules and benefits, maintain records of veteran and non-veteran students, and make all records available to the VA for inspection at any time.

29.     Each school's certifying official must complete VA Form 22-1999, *VA Enrollment Certification*, for each veteran who will receive VA educational assistance benefits.  By using this form, the school is certifying the course in which the veteran is being enrolled, the start and end dates of the enrollment period, the number of hours per week the veteran will attend class, and the cost of tuition and fees for the course.  Beard serves as the certifying official for AMA/Academy.

30.     The VA must be notified of any changes in the information that the certifying official has certified.  In addition, if the student graduates from the program, the certifying official must document this graduation on VA Form 22-1999b, *Notice of Change in Student Status*.  *See* Public Law 114 – 315 § 404.[2]

31.     The school has the option of completing either a hard copy VA Form 22-1999 or the electronic version of the form available through the VA-ONCE system.  By signing a VA Form 22-1999, either by hand or electronically, the school certifies that the veteran's course or courses

---

[2] Public Law 114 – 315 § 404 became effective on January 1, 2018.

are "generally acceptable to meet requirements for the student's educational, professional, or vocational objective," and that all the "85-15 ratio requirements[3] have been satisfied."

**D. Retention of Records.**

32.     Records including those pertaining to students not receiving benefits from the VA, as well as those pertaining to each period of enrollment of a veteran or other eligible person, should be retained at the school for at least three years following the termination of the enrollment period. *See* 38 C.F.R. § 21.4209(f).

## FACTUAL ALLEGATIONS

33.     In 2007, Beard rebranded her salon as AMA, located at 1303 Michigan Avenue, Mobile, Alabama 36605.  According to the *AMA/Academy December 2011 Catalog* (revised 2013, 2016, 2018, 2019) ("AMA/Academy Catalog"), Beard expanded her business in 2013 to create a barber/stylist program under the name AMA/Academy.  AMA/Academy was originally located at 3542 Main Street, Moss Point, Mississippi, 39563 and is currently located at 4907 Hubert Street, Moss Point, Mississippi 39563.  Beard represents in her AMA/Academy Catalog, that AMA owns AMA/Academy.  AMA/Academy has been licensed by the Mississippi State Board of Barber Examiners since 2014.

**A. Defendants Knowingly made False Statements and False Certifications on VA Approval Applications and VA Enrollment Certification Forms.**

34.     On November 2, 2016, Beard submitted to the MS VA SAA, on behalf of AMA/Academy, a signed *Application for Original Approval of an IHL/NCD* with supporting documents (the "Application").  Specifically, Defendants sought approval to receive VA education

---

[3] The educational facility is responsible for ensuring that veterans receiving VA tuition assistance do not make up more than 85% of their student population.

assistance funds for the following courses:  Barber/Stylist 1500 hours; Barber Instructor 600 hours; Cosmetology 1500 hours; and Cosmetology Instruction 600 hours.  Beard, on behalf of AMA and AMA/Academy, represented to the MS VA SAA that these courses had been taught continuously at her school since August 18, 2014.  Beard listed the school address as 4907 Hubert Street, Moss Point, Mississippi 39563, and identified the owner as herself April T. Beard.

35.     By signing the Application, Beard certified that "the information contained in the application and attachment(s), catalog or bulletin, student handbook, supplements, addenda and the supporting approval material is true and correct in content and policy … ."  38 C.F.R. § 21.4253 (accredited) or § 21.4254 (non-accredited).

36.     Beard, as CEO/Director of AMA/Academy, also certified that the AMA/Academy keeps adequate records to show attendance, progress, and grades of the veterans or eligible persons; that the standards relating to progress and conduct are enforced; that the school will make available to authorized government representatives records and accounts pertaining to veterans who receive educational assistance; and the programs, curriculum, and instruction are consistent in quality, content, and length with similar programs.

37.     In the Application, Beard certified that AMA/Academy "has operated as an educational institution for the last two years" and does not use "erroneous, deceptive, or misleading practices…"  Further, Beard certified that the school is financially sound, and that it will request approval from the SAA for any changes in curriculum, instructors, class hours, tuition, and facilities.  Upon completion of training, Defendants are to provide the veteran with a certificate of completion.

38.     In support of the Application, Beard provided a 2011 School Catalog, revised in 2016, outlining attendance policy, means of recording attendance, grading process, days and hours

of class instruction, and AMA/Academy's progress policy and student conduct policy.

39.     Beard submitted *2014- and 2015-Income Statements* to the MS VA SAA on Watkins Tax Service letterhead which she claimed accurately depicted AMA and/or AMA/Academy's assets and liabilities.  Watkins Tax Service does not have a record of the income statements Beard submitted to the MS VA SAA, nor did they recognize them as their own.

40.     The MS VA SAA relies on financial records during the approval process to evaluate whether the institution is financially sound without VA educational assistance funds.

41.     As part of the application process, Beard listed the specific barber and instructor courses offered for approval, including the number of hours provided for instruction, the degree/diploma awarded, and the costs of tuition and fees.  Specifically, Beard's school catalog provided the following: "the professional course in barber requires the satisfactory completion of 1500 hours training.  This will entitle you to take the Mississippi State Board of Barber Examination for the Mississippi Barber License."

42.     On or about May 2, 2017, the MS VA SAA approved Beard's programs outlined in the *AMA/Academy Catalog and School Handbook, 2011 revised August 2016* for the use of GI Bill Benefits.  The VA assigned AMA/Academy facility code 2-5-1064-24 and concurred with the MS VA SAA's approval on May 19, 2017, effective May 2, 2017.

43.     The MS VA SAA approved the following AMA/Academy courses:

By authority for 38 CFR 21.4254, we approve the following programs:

| Name of Program | Length In Clock Hours | Maximum Ceiling | Teacher/Student Ratio | Page |
|---|---|---|---|---|
| Barber/Stylist | 1500 | 25 | 1/25 | 15-16 |
| Barber Instructor | 600 | 25 | 1/25 | 11 & 14 |
| Cosmetology | 1500 | 25 | 1/25 | Insert |
| Cosmetology Instructor | 750 | 25 | 1/25 | Insert |

Attendance Schedule: Tuesday-Friday 8:00 am-4:00 pm. Saturday's 8:00 am-2:30 pm.
Lunch Breaks: 30 minutes and one 15 minute break.

44.     From July 2017 through November 2019, Beard mailed or faxed at least 15 *VA Enrollment Certifications* (VA Form 22-1999) to the VA Education office located in Muskogee, Oklahoma.   On these enrollment certifications, Beard certified to the VA that the cost of barber tuition and fees totaled $22,400.00 and/or the cost of Barber Instructor Certifications totaled $15,400.00.  This was more than Beard represented on her enrollment contracts provided to VA students, and more than Beard charged non-VA students.

45.     In addition, on Form 22-1999, *VA Enrollment Certification*, Beard, AMA, and AMA/Academy certified that it has "exercised reasonable diligence in meeting all applicable requirements of Title 38, U.S. Code, and any failure by the institution to meet the requirements of the will be promptly reported to the VA."

46.     Beard and AMA/Academy certified that the courses offered are approved by the SAA and are generally accepted to meet the student's vocational objective.

47.     Beard, AMA, and AMA/Academy knew the program requirements necessary to receive VA educational assistance funds.   In addition to the information contained on the Application and the *VA Enrollment Certification*s (VA Form 22-1999), Defendants have access to publicly available VA guidance through the VA's SCO Handbook which makes the responsibilities and reporting requirements of the certifying official clear;

https://www.knowva.ebenefits.va.gov/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000149088/School-Certifying-Official-Handbook-On-line#SCHOOL%20RESPONSIBILITIES.

48.     On November 2, 2016, during the *Site Visit for Initial Approval*, the MS VA SAA made Defendants aware of their obligations and briefed Beard on her duties and responsibilities in the certification and control of veteran's records, as well as notifying the VA of any changes in a timely manner.

49.     The MS VA SAA made Defendants aware of their obligations in correspondence to Beard and AMA/Academy approving its non-college courses on or about May 4, 2017.

50.     The VA made Defendants aware of their obligations in correspondence to Beard and AMA/Academy accepting the approval information received from the MS VA SAA on or about May 19, 2017.

51.     Beard also contacted the MS VA SAA numerous times during the enrollment certification process with questions on specific students.  The MS VA SAA explained program rules, processes, and obligations.

52.     Yet despite this information and knowledge, Beard specifically submitted materially false certifications to the MS VA SAA and/or VA, and submitted false claims for reimbursement.

**B.**  ***Defendants charged inflated and disparate tuition for VA students as compared to non-VA students in violation of program requirements.***

53.     Beard generally charged non-veteran students $50/week or $2,400 a year, and students in receipt of VA education assistance benefits a different much higher price of $22,400 for the Barber course and $15,400 for the Barber Instructor course.

54.     According to Beard's records, many non-VA students only paid enrollment fees of $100 to $250, or a down payment ranging from $500 to $1,130.  The highest tuition amount Beard documented from a non-VA student totaled $3,575.00 from student K.D.

55.     For more than half of the non-VA student records Beard provided, Defendants did not have accounts of any payments from non-VA students.  Only five of the non-VA students had payments higher than $1,000.

56.     Beard previously advertised $50/week tuition costs on her December 2015 Facebook page.

57.     On May 2, 2019, the VA and the MS VA SAA conducted an onsite compliance survey of AMA/Academy.  In response to MS VA SAA's request for enrollment and tuition records, Beard produced an enrollment record for non-VA student N. H. showing a balance owed of $21,300.00.  Non-VA student N. H. stated that she paid Beard $50/week for tuition for a total of $1,000 over the course of five months.

58.     Non-Veteran student N.S. attended AMA/Academy from 2017-2018 and paid approximately $100/month for tuition for a total of $1,100.

59.     Veteran student R.E. who was rated 50% for Post 9/11 GI benefits did not pay the balance owed after the VA paid 50% of tuition.  To participate in the program, VA beneficiaries must pay their share of tuition and fees.  38 C.F.R. § 21.4263.

60.     This tuition disparity violates program requirements making Defendants' non-accredited barber school ineligible to train veterans under the Post-9/11 GI Bill program.

61.     Defendants falsely certified compliance with program rules and submitted false claims to the VA for reimbursement.

**C.**   ***Defendants did not keep accurate attendance records or hold classes according to AMA/Academy policies and enrollment certifications.***

62.     Some Veterans stated that Defendants did not conduct classes in accordance with documents supplied with the program approval application and enrollment certifications requiring 1500 clock hours and class attendance Tuesday – Friday, 8:00 am – 4:00 pm, and Saturday, 8:00 am – 2:00 pm, with thirty-minute lunch breaks.

63.     Some VA students claimed they signed attendance records after hours and for days that they were not present.

64.     Most of the VA Students did not receive certificates of completion or diplomas as Beard represented in her approval application and enrollment certifications. None of the VA students were able to test with the Mississippi Barber Board.

65.     According to some VA students, Beard was often not present at AMA/Academy, and provided instruction only when she happened to have a paying customer.

66.     A student stated there were no real classes at AMA/Academy and that students would just show up and sign in.

67.     Beard did not keep electronic attendance records.  Instead, Defendants maintained two sets of attendance records -- sign-in sheets and records provided to the Mississippi State Board of Barber Examiners.  There were discrepancies between these two sets of attendance records. Moreover, Defendants' attendance records show students present on holidays, Sundays, and Mondays when classes were not conducted.

68.     Out of town student L.P. did not attend class.  Defendants' attendance records, however, documents L.P.'s presence.

69.     On June 13, 2018, the Mississippi Board of Barber Examiners made an unannounced visit and noted one student was present though ten were "enrolled."  Defendants' attendance rosters noted six veteran students present.

70.     On August 11, 2018, the Mississippi Board of Barber Examiners made an unannounced visit and observed one student present and no instructors present.  The attendance records noted three veteran students present.

71.     On August 14, 2018, the MS VA SAA visited AMA/Academy and no students were present.  The attendance roster included two veteran students.

72.     The completion of 1500 clock hours is a Mississippi State Board of Barber Examiners' requirement.

73.     Defendants falsely certified compliance with program rules and submitted false claims to the VA for reimbursement.

**D.   *Defendants did not keep accurate and complete financial records.***

74.     On May 2, 2019, the VA and MS VA SAA conducted a Compliance Survey at the Moss Point, Mississippi location.  Although requested, Beard did not produce financial records for any of the students.

75.     During the Compliance Survey, the VA and MS VA SAA found the following improprieties resulting in Beard, AMA, and AMA/Academy's 60-day suspension from receiving educational assistance funds:  1) disorganized record keeping; 2) Beard could not correctly identify the number of actively enrolled students; 3) Beard did not have a working knowledge of the 85-15 rule; 4) attendance records were minimal; 5) and Beard failed to correctly certify tuition and fees resulting in an overpayment in the amount of  $11,620.00.  Beard did not provide payment ledgers or other records documenting tuition and fee payments during the survey.

76.     On June 5, 2019, Beard re-submitted approval application paperwork, which again included compliance program certifications, in an effort to lift the MS VA SAA's imposed suspension.  Defendants did not provide financials, payment ledgers, or payment receipts.

77.     On June 10, 2019, the MS VA SAA conducted a follow-up Compliance Survey. Although requested, Beard did not produce financial records to the VA.  The MS VA SAA notified Defendants of the $11,620.00 overpayment.

78.     On August 12, 2019, the VA made seven written demands for payment from Defendants for a total amount of $11,620, for ineligible tuition and fees that Defendants submitted on seven VA students' enrollment certifications.  These funds have never been repaid.

79.     Effective January 27, 2020, the MS VA SAA withdrew AMA/Academy's prior approval to train veterans and other eligible beneficiaries under Chapters 30-33 and 35 of Title 38.

80.     In January 2022, in response to a November 29, 2021, VA Inspector General subpoena requesting non-VA student payment ledgers and receipts, Beard produced non-VA student enrollment records for 55 students for the timeframe of September 2014 to March 2020.

81.     Defendants' payment records consisted of handwritten notes on student enrollment records noting a $100 to $250 downpayment, scholarship references, notes on payment dates and amounts, and a few handwritten receipts.  Defendants' records noted payments ranging from "none" to $3,575 for non-VA students.

82.     Defendants failed to keep adequate financial records in compliance with program rules and requirements.

83.     Defendants inflated the tuition costs for VA students as compared to non-VA students and thus was not entitled to received GI education assistance funds.

84.     Defendants falsely certified compliance with program rules and submitted false claims to the VA for reimbursement.

**E.     *Defendants' false statements and false claims were material to the VA's decision to pay the claims.***

85.     Materiality means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

86.     The VA would not have paid the Post-9/11 GI Bill tuition and fees to Defendants if it had known that Defendants falsely inflated the amount of tuition and fees it claimed on

enrollment certifications; (2) falsely claimed compliance with its obligation to exercise reasonable diligence in complying with Title 38, to include accurate attendance and financial record keeping, and performing instruction and course completion in compliance with approved curriculum; and (3) falsely claimed compliance with charging comparable Veteran and non-Veteran tuition and fee rates.

87.     The MS VA SAA discovered Defendants' failure to meet material program requirements during the 2019 Compliance Survey resulting in Defendants' suspension from the program.

88.     The VA also demanded repayment for ineligible tuition and fees certified on VA enrollment certifications that were not included on the students' enrollment contracts with AMA/Academy.

89.     Defendants falsely certified compliance with program rules and submitted false claims for payment from July 2017 to November 2019.

90.     Relying on these false certifications, the VA directly deposited Chapter 33 education assistance funds into Beard's individual bank account[4] in the amount of $235,734.00, to which Defendants were not entitled.

91.     Defendants submitted false claims to the VA for reimbursement for the following veteran students:

---

[4] It appears Beard used one bank account at Singing River Federal Credit Union for herself, AMA, AMA/Academy, and Open Heart Community Outreach, Inc.

| VA Student | Sent Via | Cert Received | Payment Date | Payment | School Start Date | School End Date | Program |
|---|---|---|---|---|---|---|---|
| C. W.-J. | USPS | 7/24/2017 | 8/7/2017 | $4,381 | 6/6/2017 | 7/10/2018 | Barber |
| M. C. | USPS | 7/24/2017 | 8/16/2017 | $19,833 | 5/2/2017 | 5/10/2018 | Barber |
| S. K. | USPS | 10/5/2017 | 10/10/2017 | $22,400 | 8/10/2017 | 8/15/2018 | Barber |
| V. B. | USPS | 11/6/2017 | 11/22/2017 | $22,400 | 9/29/2017 | 12/4/2018 | Barber |
| M. C. | USPS | 2/7/2018 | 3/1/2018 | $22,400 | 1/2/2018 | 4/7/2019 | Barber |
| T. T. | USPS | 2/7/2018 | 3/12/2018 | $22,400 | 1/4/2018 | 4/19/2019 | Barber |
| L. P. | USPS | 4/3/2018 | 4/11/2018 | $22,400 | 1/2/2018 | 5/3/2019 | Barber |
| K. G. | USPS | 3/22/2018 | 4/19/2018 | $17,824 | 5/1/2018 | 5/10/2019 | Barber |
| T. W. | USPS | 7/2/2018 | 8/7/2018 | $17,588 | 5/23/2018 | 8/27/2019 | Barber |
| S. K. | Fax | 10/4/2018 | 10/23/2018 | $5,565 | 9/4/2018 | 10/1/2018 | Instructor |
| R. E. | USPS | 10/17/2018 | 11/8/2018 | $11,200 | 9/25/2018 | 12/20/2019 | Barber |
| S. K. | Fax | 10/17/2018 | 6/10/2019 | $1,142 | 9/4/2018 | 11/29/2018 | Instructor |
| L. P. | Fax | 8/25/2019 | 9/5/2019 | $15,400 | 8/20/2019 | 9/8/2020 | Instructor |
| M. C. | Fax | 11/25/2019 | 12/5/2019 | $15,400 | 4/9/2019 | 10/29/2019 | Instructor |
| T. T. | Fax | 11/25/2019 | 12/5/2019 | $15,400 | 4/12/2019 | 11/1/2019 | Instructor |

92.     The VA would not have paid the above claims had it known of Defendants' false certifications.

### COUNT I: FALSE OR FRAUDULENT CLAIMS

**VIOLATION OF THE FALSE CLAIMS ACT
PRESENTMENT**
(31 U.S.C. § 3729(a)(1)(A))

93.     The United States incorporates by reference the allegations contained in Paragraphs 1 through 92.

94.     From at least July 2017 through November 2019, Defendants Beard, AMA, and AMA/Academy knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment or approval.  More specifically, Defendants submitted enrollment certifications via the USPS and/or facsimile in which Defendants (1) falsely inflated the amount

of tuition and fees they claimed for Post-9/11 GI Bill veterans over non-veteran students; (2) falsely represented attendance hours and instruction to be provided; (3) and falsely certified that they had exercised reasonable diligence in meeting Title 38's requirements, when they had not done so.

95.     The United States suffered damages because of Defendants' false or fraudulent claims.

96.     Defendants are liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 (as revised by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. Part 85) for each false claim presented or caused to presented by Defendants.

## COUNT II: FALSE OR FRAUDULENT CLAIMS

### VIOLATION OF THE FALSE CLAIMS ACT
### FALSE CERTIFICATIONS
(31 U.S.C. § 3729(a)(1)(B))

97.     The United States incorporates by reference the allegation contained in Paragraphs 1 through 96.

98.     From at least November 2016 through January 2022, Defendants Beard, AMA, and AMA/Academy knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim.  More specifically, Defendants submitted applications for approval to the MS VA SAA (2016 and 2019) falsely certifying compliance with program rules and requirements.  Defendants also submitted enrollment certifications via the USPS and/or facsimile in which Defendants (1) falsely inflated the amount of tuition and fees it claimed for Post-9/11 GI Bill veterans over non-veteran students; (2) falsely represented attendance and

instruction to be provided; (3) and falsely certified that it had exercised reasonable diligence in meeting Title 38's requirements, when it had not done so.

99.     The United States suffered damages because of Defendants' false or fraudulent claims.

100.     Defendants are liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 (as revised by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. Part 85) for each false claim presented or caused to presented by Defendants.

## COUNT III: FALSE OR FRAUDULENT CLAIMS

### VIOLATION OF THE FALSE CLAIMS ACT
### REVERSE FALSE CLAIMS
31  U.S.C. § 3729(a)(1)(G))

101.     The United States incorporates by reference the allegation contained in Paragraphs 1 through 100.

102.     From at least November 2016 through January 2022, Defendants Beard, AMA, and AMA/Academy knowingly made false statements and false certifications to the VA.  Defendants submitted enrollment certifications via the USPS and/or facsimile in which Defendants falsely inflated the amount of tuition and fees by including non-reimbursable tuition and fees for a total of $11,620.00.  The VA notified Defendants of this overpayment on or about August 12, 2019, on behalf of seven veteran students and requested Defendants to repay these monies.  Defendants knowingly refused to pay.  Over 60-days has elapsed since the VA's demand for payment.

103.     The United States suffered damages because of Defendants' false or fraudulent claims.

104.    Defendants are liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 (as revised by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. Part 85) for each false claim presented or caused to presented by Defendants.

### COUNT IV: PAYMENT UNDER MISTAKE OF FACT

105.    The United States incorporates by reference the allegations contained in Paragraphs 1 through 104.

106.    As a consequence of the acts described above, the United States paid money to Beard, AMA, and AMA/Academy from at least July 2017 through November 2019, based on a mistaken belief that Defendants had complied with federal rules and regulations governing Post-9/11 GI Bill benefits.

107.    The United States paid more money to Defendants than it would have paid had the United States known that Defendants were charging veterans amounts in excess of the charges for tuition and fees which similarly circumstanced non-veterans receiving VA assistance were required to pay; and further, had the United States known that Defendants were not providing required instruction or certificates of completion.

108.    The United States suffered damages because of payments to Defendants under mistake of fact.  Defendants are liable to the United States for an amount to be determined at trial.

### COUNT IV: UNJUST ENRICHMENT

109.    The United States incorporates by reference the allegations contained in Paragraphs 1 through 108.

110.    From at least July 2017 through November 2019, the United States paid Post-9/11 GI Bill educational assistance benefits to Defendants in amounts exceeding what Defendants knew or should have known it was actually entitled to receive.

111.    Defendants retained or used monies from the United States for Post- 9/11 GI Bill educational assistance benefits to which Defendant was not entitled and was therefore unjustly enriched.

112.    By directly or indirectly obtaining federal funds from VA to which it was not entitled, Defendants were unjustly enriched at the expense of the United States and is liable to account and pay to the United States an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States respectfully requests that this Court declare a judgment in favor of the United States and against Defendants as follows:

a.    On Counts I, II, and III, against Defendants for the United States' damages, trebled as required by law, and such costs and civil penalties as required by law, together with such further relief as may be just and proper.

b.    On Count IV for payment under mistake of fact, against Defendants for an amount equal to the money paid by the United States to Defendants, or on Defendants' behalf, to which Defendants were not entitled, plus interest, costs, and expenses.

c.    On Count V for unjust enrichment, against Defendants for the damages sustained and/or amounts by which Defendants retained monies received or benefitted from reimbursements paid by the United States to which Defendants were not entitled, plus interest, costs, and expenses.

Date:  October 5, 2023                                    Respectfully submitted,

                                                          TODD W. GEE
                                                          UNITED STATES ATTORNEY

                                                          *s/ Deidre Lamppin Colson*
                                                          Deidre Lamppin Colson
                                                          Assistant United States Attorney
                                                          1575 20th Avenue
                                                          Gulfport, Mississippi 39501
                                                          Email: deidre.colson@usdoj.gov
                                                          Telephone:     (228) 563-1560
                                                          Facsimile:     (228) 563-1571
                                                          MS Bar No.    10125